IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WHITNEY BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-117-WHA |
| ) | (WO) |
| ANDERSON LLOYD PROPERTIES, LLC, ) | |
| FLOREE ANDERSON, and JIMMIE L ) | |
| ANDERSON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment, (Doc. # 17), and an accompanying Brief in Support, (Doc. # 18), filed by Plaintiff Whitney Bank. Whitney Bank filed a Complaint, (Doc. # 1), on February 23, 2016, seeking damages against Defendants Anderson Lloyd Properties, LLC ("ALP"), Floree Anderson, and Jimmie L. Anderson (collectively, "Defendants") for allegedly breaching two note and mortgage contracts. On March 22, 2016, Defendants answered, admitting to all of the Plaintiff's allegations, except those concerning breach of the underlying mortgage contracts. (Doc. # 12). After brief discovery, Whitney Bank filed this Motion on July 13, 2016 arguing that Defendants failed, without excuse, to make the final payment on one of the note and mortgage contracts, and that such a failure constitutes default, or breach, under the terms of both contracts. (Doc. # 18). Whitney Bank also presented evidence, including an affidavit by Plaintiff's counsel, establishing that the loan documents provide for reasonable attorneys' fees and expenses which have been incurred in the amount of $10,173.34. (Doc. # 17-2–17-3, 17-6–17-7, 17-12). On August 2, 2016, the court granted the Defendants'

Motion for Additional Time to Respond, (Doc. # 20), giving the Defendants their requested additional sixty (60) days to conduct discovery needed to respond to the motion for summary judgment, and set the response date at October 3, 2016. (Doc. # 27). The Defendants filed their Response on September 27, 2016. (Doc. # 28).

For the reasons stated below, Plaintiff's Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be" and a party asserting that a fact is genuinely disputed must support their assertions by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include: "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The facts, viewed in the light most favorable to the Defendants, are as follows:

On April 23, 2010, Defendant ALP executed a promissory note (the "ALP Note") and security agreement with Whitney Bank in the principal amount of $175,865.69. The ALP Note required ALP to make fifty-nine (59) equal payments of $1,566.00 each and a final "irregular payment" of $137,333.31 to be due on April 23, 2015. The ALP Note was secured by a real estate mortgage (the "ALP Mortgage") executed on the same day (collectively, the "ALP Loan").

Also on April 23, 2010, ALP members, Floree Anderson and Jimmie L. Anderson, executed guaranty agreements (the "Floree Guaranty" and "Jimmie Guaranty"), in which they unconditionally guaranteed "the full and punctual payment, performance and satisfaction of the indebtedness of borrower to lender, now existing or hereafter arising or acquired, on an open and continuing basis." (Doc. # 17-4–17-5).

On March 17, 2014, Defendant Floree Anderson executed another promissory note (the "Floree Note"), this time in the amount of $28,641.33.[1] Like the ALP Note, the Floree Note also had an irregular repayment schedule. Under the terms of the Floree Note, Floree was to make "59

---

[1] The named lender was Hancock Bank, the name by which Whitney Bank was formerly known.

regular payments of $304.94 each and one irregular last payment estimated at $15,426.38." (Doc. # 17-6). The Floree Note was secured by a future advance real estate mortgage (the "Floree Mortgage") dated September 26, 2008 (collectively, the "Floree Loan").

Both the ALP Loan and the Floree Loan and all four loan agreements—the ALP Note, the ALP Mortgage, the Floree Note, and the Floree Mortgage (collectively, the "Loan Agreements")—contained the same default provisions, including a general default provision, labeled "Payment Default," and a cross-default provision, labeled "Other Defaults," among others. (Doc. # 17-2–17-3, 17-6–17-7). "Payment Default" was defined as failure "to make any payment when due under this Note." *Id.* The "Other Defaults" provision defined default as failure to "comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower." *Id.*

Likewise, the Loan Agreements contained an acceleration clause, which provided that "upon the occurrence of any default . . . the entire unpaid principal balance under this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount." *Id.*

In addition, if Defendants refused to repay the entire balance for any reason or, otherwise, defaulted on either loan, Defendants agreed to indemnify Whitney Bank for its reasonable attorneys' fees and expenses incurred in attempting to enforce the provisions of the Loan Agreements.

In April of 2015, Defendants failed to make the final, irregular payment on the ALP Loan in the amount of $137,333.31.

Then, in October 2015, Defendants entered into a negotiation with Whitney Bank to either

surrender the properties secured by the mortgages to Whitney Bank or to refinance the mortgages into a more manageable repayment schedule. (Doc. # 28, p. 7, ¶ 8).

At that time, Defendants' counsel advised Defendants "not to make any additional payments on the properties in question until Whitney representatives let them know whether they wanted to refinance the loans or if they simply wanted to assume the properties." (Doc. # 28, p. 8, ¶ 12). Accordingly, Defendants made their last payment in October 2015 for a November 2015 payment when Whitney Bank had not notified Defendants of an intent to refinance or to assume the properties. (Doc. # 28, p. 8, ¶ 12–13).

Because ALP failed to make the final payment on the ALP Loan, as guaranteed by the Andersons, Whitney Bank accelerated the entire indebtedness under that Loan, as well as the Floree Loan based on Floree's default in her guarantee of the ALP Loan, and filed this suit.

## IV. DISCUSSION

### *Breach of Contract*

The main issue before this court is whether Defendants breached two note and mortgage contracts when they failed to make payments on one of them. "'Breach' consists of the failure without legal excuse to perform any promise forming the whole or part of the contract." *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1085 (Ala. 1979) (citing 17 Am. Jur.2d Contracts § 441 at 897 (1964)); *Breach of contract*, Black's Law Dictionary (5th ed. 1979). "Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." *Seybold*, 376 So. 2d at 1085.

Here, the promise was one not to default on any of Loan Agreements with Whitney Bank. The Loan Agreements define "Default" according to a variety of so-called "Event[s] of Default," one of which is labelled "Payment Default." (Doc. # 17-2–17-3, 17-6–17-7). A "Payment Default"

is defined as a failure to "make any payment when due." *Id.*

In addition to these default provisions, the Loan Agreements also contained a cross-default provision, entitled "Other Defaults," which together with the Continuing Guaranty provision found in the Floree Guaranty, clarified that a default as to one loan was a default as to both of them. (Doc. # 17-2–17-7). Specifically, the Loan Agreements' "Other Defaults" provision defines a cross-default as a failure "to comply with or to perform any other term, obligation, covenant or condition contained in [the promissory notes] or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in ***any other agreement*** between Lender and Borrower." (Doc. # 17-2–17-3, 17-6–17-7) (emphasis added). Moreover, the Floree Guaranty's "Continuing Guaranty" provision guaranteed "the full and punctual payment, performance and satisfaction of the indebtedness of borrower to lender, now existing or hereafter arising or acquired, on an open and continuing basis." (Doc. # 17-4–17-5) (capital letters removed). Coupled together, these provisions provide that a default as to one loan was a default as to both of them.

Furthermore, all of the loan agreements included an acceleration clause allowing Whitney Bank to declare, "upon the occurrence of any default[,] . . . the entire unpaid principal balance under this Note and all accrued unpaid interest . . . immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount." (Doc. # 17-2–17-3, 17-6–17-7). All of these provisions—the Payment Default provision, the Other Default provision, the Continuing Guaranty, and the acceleration provisions—taken together provide that, if Defendants defaulted on one of the loans, Whitney Bank was automatically (and immediately) entitled to the remaining balance, including any remaining principal and interest, on both the ALP Loan and the Floree Loan.

Plaintiff argues that Defendants were in default on both the ALP Loan and the Floree Loan because they were in "Payment Default" on the ALP Loan. Plaintiff has submitted evidence that Defendants "fail[ed] to make the final payment of all accrued principal and interest when the ALP Note reached maturity in April 2015," which qualifies as "Payment Default" under the ALP Note. (Doc. # 18). Moreover, Plaintiff argues that Defendants "failed to fully guarantee ALP's obligations as set forth in the Floree Guaranty, and thus, pursuant to the cross-default provision in the Floree Note, she defaulted on her obligations under the Floree Note." *Id.* Furthermore, "[t]his default provided Whitney Bank with the right to accelerate the entire indebtedness as borrowed under the Floree Note." *Id.* (internal citations omitted).

Plaintiff submits an affidavit showing that Defendants failed to make the final payment on the ALP Loan. (Doc. # 17-1). Specifically, Jeremy Martin, who serves as Vice President of Whitney Bank attested to the fact that Defendants "defaulted on the ALP Note and the ALP Mortgage by failing to make the final payment of all accrued principal and interest when the ALP Note reached maturity in April 2015." (Doc. # 17-1). Moreover, Plaintiff submitted Defendants' admission that "the last payment made on this loan was November 2015," (Doc. # 17-10, at ¶ 2) and that "[Defendants] do owe a portion of the loan." *Id.* at ¶ 3.

Defendants do not submit any evidence to dispute the fact that they failed to make their final payment on the ALP Loan in April of 2015.

However, Defendants contend that "[Floree Anderson] believes that she is current on the payment of the [Floree Loan] and that she believes that she was misled as to the [ALP Loan]. (Doc. # 28, p. 1–2, ¶ 2). According to her affidavit, Floree Anderson denies the fact that Defendants were in willful breach of their mortgage and note contracts because Defendants' previous attorney advised Defendants to discontinue making payments on their contracts until an agreement was

7

made "to either surrender the properties to Whitney Bank . . . [or] to refinance the mortgages into a more manageable schedule." (Doc. # 28, pp. 7–8, ¶¶ 8, 12). Defendants contend that "[i]f we had been told by the bank that they wanted us to continue making payments during this negotiation or had been told by our previous counsel then we would have done so." (Doc. # 28, p. 8, ¶ 14).

The court cannot accept this "could-of-should-of-would-of" argument at this late juncture. Defendants made a promise to Whitney Bank to make payments according to the terms of the Loan Agreements. Defendants' alleged reliance on the advice of previous counsel to discontinue making payments on their Loans is not a defense to a breach of contract claim. There is no provision in the loan documents which would allow this. Defendants had no legal right to stop making payments on the loans when due and Whitney Bank had no obligation to accept the property in satisfaction of the loans or to refinance the loans.

Accordingly, there is no dispute that Defendants failed to make the final payment on the ALP Loan. Since failure to make a payment amounts to "Payment Default" under the terms of the Loan Agreements, ALP defaulted on the ALP Loan, and the Andersons defaulted on their guarantees of that loan. Moreover, as previously discussed, because Floree defaulted on the ALP Loan, she also defaulted on the Floree Loan. Accordingly, there is no genuine dispute over any material fact concerning whether Defendants breached the note and mortgage contracts.

The evidence before the court establishes that as of July 13, 2016, the amount owed on the ALP loan was $135,523.60, consisting of a principal balance of $127,716.38, and accrued interest as of that date of $6,107.18, with interest thereafter of $23.9468212 per diem, and appraisal fees of $1,700.00 (Doc. # 17-1, p. 3, ¶ 16), and that as of that date the amount owed on the Floree Loan was $23,391.94, consisting of a principal balance of $23,310.91 and accrued interest as of that date of $81.03, with interest thereafter of $3.2376263 per diem, (Doc. # 17-1, p. 4, ¶ 24).

*Attorneys' Fees*

Whitney Bank also requests attorneys' fees that were contractually guaranteed under the Loan Agreements. Whitney Bank submitted evidence that all of the Loan Agreements contained an "Attorneys' Fees; Expenses" provision, which entitled Whitney Bank to recover all reasonable attorneys' fees and expenses incurred while attempting to enforce any of the terms under the Loan Agreements. (Doc. # 17-2–17-3, 17-6–17-7). In addition, Plaintiff's counsel attached an affidavit which included an accounting of Whitney Bank's attorneys' fees and expenses in the amount of $10,173.34 and an attestation as to their reasonableness. (Doc. # 17-12).

Defendants do not dispute the validity of the attorneys' fees provision in the Loan Agreements, or the validity of the underlying Loan Agreements as a whole. Defendants also do not challenge Plaintiff's counsel's accounting of its fees and expenses or their reasonableness in this case.

Accordingly, the court finds the plaintiff's request for attorneys' fees and expenses and its accounting of said fees and expenses to be reasonable. Moreover, there is no prohibition at law against the award of attorneys' fees that may be applicable to this case. *Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case.") Whitney Bank's claim for attorneys' fees and expenses is due to be granted in the amount claimed.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

(1) The Plaintiff's Motion for Summary Judgment, (Doc. # 17), is GRANTED.

(2) Plaintiff is awarded the sum of $138,828.26 against all Defendants on the ALP Loan, consisting of $135,523.60 due on July 13, 2016 and $3,304.66 in interest

from that date to the date of this Order.

(3) Plaintiff is awarded the sum of $23,838.73 against the Defendant Floree Anderson on the Floree Loan, consisting $23,391.94 due on July 13, 2016 and $446.79 in interest from that date to the date of this Order.

(4) Plaintiff is awarded the sum of $10,173.34 against all Defendants for attorneys' fees and expenses.

(5) Final Judgment will be entered accordingly.

Done this 28th day of November, 2016.

   /s/ W. Harold Albritton_____
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE